Howard T. Hogan, J.
In this taking, of a portion of a gasoline service station site, the county has acquired a strip of land with 150± feet fronting on Old Country Road to a depth of 11.2 to 11.6 feet. The strip was part of a larger parcel of land which contained 23,293 square feet and which was utilized as a gasoline filling station in conformity with the requirements of the Town of Oyster Bay. According to the vesting map, the area taken in fee was 1,686 square feet, which measurement the court adopts.
In addition the county utilized a working easement of 1,501 square feet which the parties have stipulated was required for a period of 15 months, and that the rate of return thereon should be 6% per annum.
The parties have also stipulated that the value of the improvements actually acquired was $2,342, and that the owner at the time of vesting was Old Country Realty Corporation.
The expert for ,the claimant approached the problem of valuation through three approaches: cost, economic and market value. He calculated a before value of $270,000 and an after value of $186,278. After adjusting for the stipulated value of the fixtures, he calculated a damage of $51,119 of which $17,000 was direct damage at $10 per square foot and $32,872 representing a diminution of $1.50 per square foot for the remaining 21,915 square feet. He included the working easement at $1,147. The petitioner’s expert utilized one comparable sale to establish a land value of $5.50 per square foot in finding a before value of $158,111.50 and an after value of $144,839.50. He utilized a $30,000 building value in both instances and, after adjusting for the stipulated improvements taken, found direct damage $9,273, severance $2,000, improvements $2,342 and an adjusted working easement value of $560 for a total of $14,180.
At the time of the taking a lease was in existence on the sub *490 ject premises in which the rent reserved was $700 per month plus 1% cents per gallon for each gallon over 50,000 gallons per month to a maximum of $100 per month. The basic rental, both before and after the taking was $8,400 per year plus the maximum average of $1,200 for a total maximum rent of $9,600 per annum until October of 1976, the expiration of the lease.
Part of the claimant’s proof was the gallonage total pumped at this station through the years 1960 through 1967. These indicate the following yearly totals:
1960 ....................1,294,886
1961 ....................1,339,250
1962 ....................1,130,316
1963 ....................1,194,366
1964 ....................1,327,858
1965 ....................1,227,963
1966 .....................829,728
1967 ..........:..........825,218
The obvious decline in the gallonage of this station subsequent to the vesting is an indication that the parcel was substantially hindered as a result of the taking. While there may be other factors which would contribute to this continuing reduction it is beyond question that significant severance damage was incurred.
This court has held that while gallonage may or may not be a significant factor in a partial taking, and that under ordinary circumstances it cannot exclusively control, nonetheless it is a factor to be considered. (See Matter of Massapequa-Woodbury Road, N. Y. L. J., April 17, 1968, p. 19, col. 4; Matter of Old Country Road, N. Y. L. J., May 4, 1966, p. 20, col. 6. See, also, Humble Oil & Refining Co. v. State of New York, 15 A D 2d 686, affd. 12 N Y 2d 861, in which the Court of Appeals approved the capitalization approach for the partial taking of a gasoline station.)
In this case, as in this court’s two decisions cited above, there is no actual economic loss ,to the property under the existing lease although the potentiality of this business site has been reduced. The tenant herein has paid the maximum rental possible under the lease both prior to and subsequent to the taking. Gallonage would be of great importance were the lease based entirely upon gallonage and the proof indicated that a reduction in gallonage and, therefore, in rent was due to the taking.
The claimant’s expert asserts that the lease is an improvident one and that the annual rental should be $18,000 per year. He *491 based this upon an analysis of six gasoline station sales which he broke down into a price per gallon per year based upon annual gallonage and purchase price. This price ranged from 19 cents to 46 cents. The court agrees with the Deputy County Attorney that the range of over 140% is too great and the number of samples (six) too small to permit accurate evaluation under what is to the court a novel approach.
The court finds that in this parcel the best guide is the comparable sale approach, but that the diminution in gallonage and the difficulty of maneuvering on the parcel subsequent to the taking must be considered on determining severance damage. The claimant’s appraiser attributed the damages to the effect of the taking on the impulse factor and the convenience factor which is of great concern to the service station industry. The loss of visibility affects the impulse of a passing motorist to stop at the station and the shortening of the turning radius to reach the pump island reduces the convenience of the station. Insofar as the Bronx County Supreme Court cases cited by claimant indicate that a station may be valued by an estimated decrease in estimated gallonage, this court declines to follow them (see Matter of City of New York, N. Y. L. J., June 11, 1968, p. 18, col. 3).
Petitioner’s valuation based upon the one sale its expert felt was comparable is of no assistance, for it appears that this sale was encumbered with an additional $28,000 mortgage which would increase the reflected value of the comparable by $2 and the indicated value to $7.40 per square foot.
The sales upon which claimant’s expert relies are all of sites which are superior to the subject parcel. His primary sale is his sale number 4 which occurred on September 29, 1965 and which reflects a value of $7.74 per square foot. His adjustment of that sale by $2.26 is however, too liberal. Similarly, his other sales are adjusted by factors which are excessive. For example, his 10% increment per year for appreciating value is not supported by the evidence.
The court finds that the land value of this station before vesting was $8.50 per square foot, and the court adopts the $30,000 building figure for both before and after values.
The claimant’s expert calculated a 15% reduction in value for the remainder of the land for which petitioner’s expert proffered a flat $2,000 for severance damage. The court finds 5% to be the basis for the severance damage on the facts in this case, and concludes that the after value for the land is $8.07 rounded to $8.10.
*492 Accordingly, the court finds the following values:
Before
Land 23,293 sq. ft. at $8.50....... $197,990.00
Building........................... 30,000.00
Improvements ..................... 2,342.00
$230,332.00
After
Land 21,607 sq. ft. at $8.10...........$175,016.00
Building........................... 30,000.00
$205,016.00
The $25,316 damage is apportioned as follows:
Land
1,686 sq. ft. at $8.50....................$ 14,331.00
Improvements ..................... 2,342.00
$ 16,673.00
Severance 21,607 sq. ft. at 40 cents =
$8,642.80 rounded to.. 8,643.00
$ 25,316.00
Parcel 24WE
The working easement of 1,501 square feet is valued pursuant to the stipulation of the parties at the land value at 6% per annum for 15 months or 7.5%. The resultant value is $956.88 rounded to $975.00.
Based upon the evidence, the testimony, the appraisals, the exhibits and the court having viewed the premises, the court
awards as follows:
Damage Parcel 24 Direct
Land 1,686 sq. ft. at $8.50............ $ 14,331.00
Improvements...................... 2,342.00
16,673.00
Severance 8,643.00
Total......... $ 25,316.00
Damage Parcel 24WE
1,501 sq. ft. working easement $ 975.00